UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CODY ALLEN CARR,** : | |
| Plaintiff : | CIV. ACTION NO. 3:24-CV-2192 |
| v. : | (JUDGE MANNION) |
| **SEAN BORAN,** *et al.***,** : | |
| Defendants : | |

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. §1983. For the reasons set forth below, plaintiff's claims against all defendants other than Sean Boran will be dismissed without prejudice, and he will be granted leave to file an amended complaint.

**I.   BACKGROUND**

Plaintiff, Cody Allen Carr, brings the instant case pursuant to 42 U.S.C. §1983 alleging civil rights violations during his pretrial detention in Dauphin County Prison ("DCP"). He filed the case on December 19, 2024. (Doc. 1).

According to the allegations in the complaint, sometime in March or April of 2023, Carr "privately and confidentially" informed a correctional

officer named Kevin Edwin[1] that he was being bullied, threatened, and extorted by another inmate. (*Id.* ¶17). Carr told Edwin that he did not want to leave his housing block to remedy the situation. (*Id.*) Edwin purportedly told him that if he did not give him the other inmate's name and did not wish to leave the housing block he could not help him. (*Id.* ¶18).

Sometime in May or June of 2023, Edwin allegedly observed a "very heated argument" between Carr and another inmate, "D.S." (*Id.* ¶19). Edwin asked Carr if everything was alright. (*Id.*) Carr responded that it was, but when D.S. was out of sight, he requested to speak with Edwin privately. (*Id.*) Carr told Edwin that the situation he had previously informed him about had "gotten severely out of hand" and requested help. (*Id.* ¶20). Carr stated that he again did not want to leave his housing block to remedy the situation. (*Id.*)

While Carr and Edwin were speaking, defendant Boran, a unit manager in the prison, came out of his office to join the conversation. (*Id.* ¶21). Edwin asked Carr to repeat to Boran what he had told him, and Carr did so. (*Id.*) Carr stated that he feared for his life and safety. (*Id.* ¶22). Boran allegedly stated that this was not the first report he had gotten about D.S. bullying, threatening, and extorting other inmates on the block, and stated

---

[1] Edwin is not named as a defendant.

that he was going to inform the prison's classification department that D.S. needed to be moved to a different block. (*Id.*) D.S., however, was allegedly not moved out of the housing block following this conversation. (*Id.* ¶23).

On September 15, 2023, Carr allegedly wrote an anonymous letter to defendant Cuffaro, the prison's director of treatment and unit management, informing her of the situation with D.S. (*Id.* ¶24). Carr stated that Boran was supposed to move D.S. but did not do so. (*Id.*) He further stated that there was an ongoing "race war" on the block that was being instigated by two correctional officers and that one of these correctional officers and D.S. had engaged in "inappropriate touching." (*Id.*) Carr put the letter in a sealed envelope and placed it in the request box in the housing unit. (*Id.* ¶25).

The next morning, an unknown inmate allegedly informed D.S. that Carr had placed a letter addressed to Cuffaro in the request box. (*Id.* ¶26). D.S. woke Carr up and asked him whether he had written the letter, but Carr denied doing so. (*Id.*) Later that day, D.S. opened the request box, removed the letter, and read it. (*Id.*) D.S. again asked Carr if he had written the letter and Carr denied doing so. (*Id.*) After several other inmates denied having written the letter, D.S. began comparing the handwriting in the letter to inmates' handwriting. (*Id.* ¶27). After doing so, he concluded that Carr had written the letter. (*Id.*) D.S. allegedly "confronted" Carr about the letter and

then punched him twice, first on the right side of his head above his ear and then on the left side of his face below his eye, which caused a bruise and knocked out two of Carr's teeth. (*Id.*)

Later that night, D.S. allegedly arranged for an unknown translator on the housing block to tell Carr that he needed to "check out," i.e., tell correctional officers that he did not feel safe and wished to leave the block. (*Id.* ¶28). The translator told Carr that if any correctional officers asked him what happened, that Carr was supposed to tell them that another inmate other than D.S. had hit him. (*Id.*) The translator purportedly told Carr that D.S. had "connects" throughout the prison and that if he told any prison officials what D.S. had done, that it "would not be pretty for" Carr. (*Id.*)

The complaint alleges that Carr suffered a concussion from the assault by D.S. and that he continues to experience head pain, dizziness, blurred vision, and nausea as a result. (*Id.* ¶29). On May 9, 2024, Carr was given an MRI, which purportedly revealed that he had a concussion and a traumatic brain injury. (*Id.* ¶¶30-31).

Carr allegedly did not inform any members of DCP's staff that he had been assaulted by D.S. until December 8, 2023, when he "vaguely informed" defendants Ray and Welden of the assault. (*Id.* ¶33). After making several requests to Cuffaro and defendant Lucas, a major in the prison, to meet with

Cuffaro and the internal affairs staff, Carr "fully informed" Cuffaro and a member of the internal affairs staff of the assault on February 23, 2024. (*See id.* ¶¶34, 46-53).

The complaint names as defendants Boran, Cuffaro, Ray, Welden, Lucas, and several supervisory defendants against whom Carr does not make any specific allegations, including defendants Briggs, Pierre, LeValley, Fitz, Bey, Bateman, Douglas, Hartwick, Pries, Chardo, Lavery, Evans, Johnson, and Chimienti. (*See id.* ¶¶5-15). The complaint asserts violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments, various provisions of the Pennsylvania Constitution, and a state statute, 61 Pa.C.S. §1724. (*See id.* ¶¶76-79). Carr seeks damages and declaratory relief. (*Id.* ¶¶80-87).

## II. DISCUSSION

The court has screened plaintiff's complaint pursuant to 28 U.S.C. §1915(e)(2)[2] and 28 U.S.C. §1915A[3] and concludes that it fails to state a claim upon which relief may be granted against all defendants other than Boran.

---

[2] 28 U.S.C. §1915(e)(2) provides:

> **(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
> **(A)** the allegation of poverty is untrue; or
> **(B)** the action or appeal—
> **(i)** is frivolous or malicious;
> **(ii)** fails to state a claim on which relief may be granted; or
> **(iii)** seeks monetary relief against a defendant who is immune from such relief.

[3] 28 U.S.C. §1915A provides:

> **(a) Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
> **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> **(2)** seeks monetary relief from a defendant who is immune from such relief.

Carr's federal constitutional claims are filed pursuant to 42 U.S.C. §1983. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat*

superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. *Id.*

Although Carr alleges violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments, the substance of all of his federal claims appears to be that defendants were deliberately indifferent to the risk that he would be assaulted by D.S. (*See* Doc. 1). Because Carr was a pretrial detainee at the relevant time, this claim is governed by the Due Process Clause of the Fourteenth Amendment and will be analyzed on that basis. *Thomas v. Cumberland County*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004)).

Fourteenth Amendment failure to protect claims are governed by the same substantive standard as failure to protect claims asserted pursuant to the Eighth Amendment. *Id.* Thus, under the Fourteenth Amendment, a prisoner "has a valid failure-to-protect claim if the prison official shows 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To successfully plead a deliberate indifference claim, a plaintiff must allege both an objectively serious risk of harm and that the defendant had subjective knowledge of the harm. *Farmer*, 511 U.S. at 837. A prison official's "failure

to alleviate a significant risk that he should have perceived but did not" cannot be considered deliberate indifference. *Id.* at 838.

In this case, the only defendant who was allegedly aware of a risk that D.S. would assault Carr prior to the assault occurring was Boran. (*See* Doc. 1). The complaint accordingly fails to state a deliberate indifference claim against any of the other defendants because it fails to allege that they had subjective knowledge of any risk of harm to Carr. *See Farmer*, 511 U.S. at 837. To the extent Carr is attempting to hold the other defendants liable because they were Boran's supervisors, this is not a sufficient basis to allege personal involvement. *Rode*, 845 F.2d at 1207. Thus, the court will dismiss the deliberate indifference claim against all defendants other than Boran.

Carr's other claims for relief plainly fail. First his claim for declaratory relief fails because he alleges only past harms and declaratory relief is not available as a remedy for past harms. *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 317-18 (3d Cir. 2022). Second, his claim seeking damages for violation of the Pennsylvania Constitution fails because Pennsylvania law does not allow plaintiffs to recover damages for violation of the Pennsylvania Constitution. *Mt. Airy #1, LLC v. Pa. Dep't of Revenue & Eileen McNulty*, 154 A.3d 268, 280 n.11 (3d Cir. 2016). Finally, his claim for violation of 61 Pa.C.S. §1724 fails because the court cannot discern any factual basis for the claim.

Section 1724 specifies the powers and duties of county jail oversight boards. *See* Pa.C.S. §1724. Here, Carr has sued several members of the Dauphin County Prison Board of Inspectors, (*see* Doc. 15), but he does not make any factual allegations against any of them beyond naming them as defendants. Thus, because the court cannot determine what facts give rise to the claim or whether the claim would be appropriate, it will be dismissed.

Before dismissing a civil rights claim for failure to state a claim, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The court will grant Carr leave to file an amended complaint because it cannot say as a matter of law at this stage of litigation that amendment of his claims would be inequitable or futile.

### III. CONCLUSION

For the foregoing reasons, the court will dismiss without prejudice all claims in the complaint except Carr's Fourteenth Amendment deliberate indifference claim against defendant Boran. Carr will be granted leave to file an amended complaint. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

Dated:   January 21, 2025
24-2192-01