**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CODY ALLEN CARR, | : | CIVIL ACTION NO. 3:24-CV-2192 |
| | : | |
| Plaintiff | : | (Judge Neary) |
| | : | |
| v. | : | |
| | : | |
| SEAN BORAN, | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff, Cody Allen Carr, a state prison who was formerly incarcerated in Dauphin County Prison, asserts that defendant, Sean Boran, violated his civil rights by failing to protect him from an assault by another inmate. Boran has moved for summary judgment and Carr has moved to compel discovery. Both motions will be denied.

## I.    Factual Background & Procedural History

Carr filed this case on December 19, 2024. (Doc. 1). The case was initially assigned to United States District Judge Malachy E. Mannion. On January 21, 2025, Judge Mannion conducted an initial screening pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A in which he dismissed all claims in the case without prejudice except Carr's Fourteenth Amendment deliberate indifference claim against Boran and granted Carr leave to file an amended complaint. (Docs. 6-7). The case was reassigned to the undersigned on January 24, 2025, shortly after the undersigned's appointment to this court.

On February 3, 2025, Carr filed a letter in which he conceded to the dismissal of all claims except the deliberate indifference claim against Boran. (Doc. 9). This court accordingly dismissed all defendants other than Boran and ordered service on Boran on February 10, 2025. (Doc. 12). Boran answered the complaint on May 13, 2025. (Doc. 23).

Discovery in this matter closed on November 30, 2025. (Doc. 44). On January 20, 2026, Carr moved to compel discovery. (Doc. 57). Boran then filed a motion for summary judgment along with a supporting brief and a statement of material facts on February 2, 2026. (Docs. 58-60). Carr filed a brief in opposition to the motion for summary judgment on March 2, 2026, but failed to file a statement of material facts responding to Boran's statement as required by Local Rule 56.1. (Doc. 65). Boran filed a reply brief in support of the motion for summary judgment on March 16, 2026. (Doc. 66). Both the motion to compel discovery and the motion for summary judgment are ripe for review.

## II.    **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A factual dispute is material if resolution of it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Mall Chevrolet, Inc. v. General Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court's duty is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 242-43.

There are "two closely related methods for a movant to succeed at summary judgment." Mall Chevrolet, 99 F.4th at 630. "First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(a)). "Second, under the Celotex approach, a moving party may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial.'" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The nonmoving party can defeat a motion for summary judgment by producing evidence to establish a genuine issue of material fact. Anderson, 477 U.S. at 256. The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The party "must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Moreover, if the nonmovant's version of disputed facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### III.   Material Facts

Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. In this case, Boran has filed a statement of material facts in support of his motion for summary judgment, (see Doc. 59), but Carr has failed to respond. Accordingly, the factual assertions in Boran's statement will be deemed admitted for purposes of resolving the instant motion to the extent they are supported by evidence of record. See M.D. PA. 56.1. The court cites directly to Boran's statement where applicable. Boran has additionally cited portions of Carr's deposition in support of his motion and has attached the deposition transcript as an exhibit to the motion. (Doc. 59-5). The court will cite directly to the deposition transcript as necessary based on its obligation to view the facts in the light most favorable to Carr as the non-movant.

4

At the time of the facts giving rise to this case, Carr was a pretrial detainee in Dauphin County Prison ("DCP"). (Doc. 59 ¶ 1). Boran was a unit manager in DCP at the relevant time. (Id. ¶ 2). Carr's claim against Boran arises from a conversation that occurred in May or June of 2023. (Id. ¶ 14).[1] During the conversation, which occurred at a prison medical facility, Carr was speaking with correctional officer Edwin about his fears of assault by another inmate, D.S., when Boran came out of his office. (Doc. 59-5 at 22:21 – 23:13). Edwin called Boran over and told him that they needed to discuss an urgent situation. (Id. at 23:15-23). Carr told Boran that he was being bullied and extorted and that he feared for his life and that the other inmate was bullying him for "food and servitude." (Id. at 24:04-08).[2] Carr stated that the bullying and extortion by D.S. had continued since he had been placed on the housing unit and that he did not feel safe in the unit. (Id. at 24:10-13). Carr further stated that he did not want to leave the housing unit unless he had to because the unit was a dormitory-style unit that allowed the inmates additional privileges. (Id. at 24:13-14, 26:16-20). Boran responded that this was not the first complaint he had heard about D.S. mistreating other inmates. (Id. at 24:14-15).

---

[1] Neither Boran's statement of material facts nor Carr's deposition testimony specifies the date when this conversation occurred, but Carr's complaint alleges it happened in May or June of 2023. (See Doc. 1 ¶¶ 19-21).

[2] Although Carr testified during his deposition that D.S. was also forcing him to perform sexual favors, Carr stated during the deposition that he did not tell Boran about this detail because he "didn't want to file a PREA." (Id.) The court takes judicial notice that "PREA" refers to the Prison Rape Elimination Act, which, among other things, sets standards for inmates to report sexual assaults in prison.

After listening to Carr's concerns, Boran stated that D.S. needed to be moved and stated that he would contact Kasey Fitz from the prison's classification unit to have him placed on the move list for that day. (Id. at 28:09-14). Counsel asked Carr during the deposition if he knew whether Boran subsequently contacted Fitz, and Carr responded, "I don't know if he did or not." (Id. at 28:19-21). Carr testified that he told Edwin and Boran that he thought "there was going to be physical violence" between him and D.S. because of an earlier argument they had. (Id. at 35:15 – 36:08). Carr then noted that he did not have any additional interactions with Boran about the threat posed by D.S. after this conversation. (Id. at 36:22 – 37:03).

During a subsequent physical altercation on September 16, 2023, D.S. punched Carr twice, once "in the lower left eye area" and once in the "right side of [his] head, above the ear."[3] (Id. at 47:01-15). After the assault, D.S. told Carr to stay on his bunk and not leave unless he was going to the bathroom until D.S. and his friends "figured out what they were going to do with [him]." (Id. at 49:22 – 50:01). Several hours later, another inmate, whom Carr identified as a "translator" for D.S. due to his "limited" English, came to Carr's bunk and told him that he needed to

---

[3] Boran's statement of material facts states that "Plaintiff admitted that he was never physically assaulted by the inmate he claimed was bullying him, either before or after his conversation with Defendant Boran," (Doc. 59 ¶ 58), but the portion of Carr's deposition and the sick call request Boran cites to support this assertion plainly do not support the assertion. (See Doc. 59-5 at 54:1 – 55:10; Doc. 59-15). Contrary to Boran's assertion, Carr's deposition testimony plainly states that he was assaulted by D.S. through two punches to the face on September 16, 2023. (See 59-5 at 47:1-15). Viewing the facts in the light most favorable to Carr as the non-moving party, the court assumes this fact is true for the purpose of resolving the instant motion for summary judgment.

"check out,"—i.e., request a transfer out of the housing unit. (Id. at 50:05-11). The translator also told Carr that if prison officials asked what happened to his eye, Carr needed to tell them that another inmate other than D.S. hit him. (Id. at 50:24 – 51:01). Following these directions, Carr subsequently told prison staff that another inmate named Joseph Motter committed the assault. (Id. at 43:16 – 44:06; 52:20 – 53:06).[4]

## IV. Discussion

### A. Motion to Compel Discovery

The court begins its analysis with Carr's motion to compel discovery. The motion will be denied. The discovery deadline in this matter expired on November 30, 2025, (see Doc. 44), and Carr has neither filed a motion for extension of that deadline nor explained why an untimely discovery motion should be considered.[5]

### B. Motion for Summary Judgment

Plaintiff brings his constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d

---

[4] Boran's statement of material facts includes several other factual assertions related to Carr's physical injuries and resulting medical care, but summarizing these facts is not necessary to resolve the motion for summary judgment.

[5] The court does not consider whether additional discovery is necessary to respond to Boran's motion for summary judgment because, as discussed below, the motion for summary judgment will be denied.

1199, 1204 (3d Cir. 1996). To succeed on a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Carr's claim sounds in deliberate indifference to a risk of an assault by another inmate in violation of the Fourteenth Amendment. Boran argues he is entitled to summary judgment because the claim fails on the merits and because he is entitled to qualified immunity. (Doc. 83).

Fourteenth Amendment failure to protect claims are governed by the same substantive standard as failure to protect claims asserted pursuant to the Eighth Amendment. Thomas v. Cumberland County, 749 F.3d 217, 223 n.4 (3d Cir. 2014) (citing A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 579 (3d Cir. 2004)). Thus, under the Fourteenth Amendment, a prisoner "has a valid failure-to-protect claim if the prison official shows 'deliberate indifference to a substantial risk of serious harm to an inmate.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 828 (1994)). To succeed on a deliberate indifference claim, a plaintiff must establish both an objectively serious risk of harm and that the defendant had subjective knowledge of the harm. Farmer, 511 U.S. at 837. A prison official's "failure to alleviate a significant risk that he should have perceived but did not" cannot be considered deliberate indifference. Id. at 838.

Here, there are genuine issues of material fact as to whether Boran was deliberately indifferent to the risk of harm to Carr. Boran argues that he cannot be

found to have been deliberately indifferent because when Carr informed him of the risk of an assault by D.S. "Boran agreed that action was needed and stated that the inmate should be moved through classification." (Doc. 60 at 5). Boran also notes that Carr "does not know what actions Defendant Boran took after referring the matter to classification" and therefore cannot establish Boran's personal involvement in an alleged violation of Carr's civil rights. (Id. at 6). The record is devoid, however, of any evidence of whether Boran actually referred the matter to the proper authorities to have D.S. moved after the conversation with Carr. Boran points to Carr's absence of evidence of any wrongful action by Boran, but Carr's claim is specifically based on Boran not taking any action. Thus, for Boran to meet his burden to show that there is no genuine dispute of material fact, he would need to provide evidence that he took appropriate steps to protect Carr from harm, rather than just telling Carr that he would do so. In the absence of such evidence, Boran's motion for summary judgment must be denied.

Boran's qualified immunity argument fails for the same reason. A government official is entitled to qualified immunity if the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Rivas-Villegas v. Cortesluna, 595 U.S. 1, 5 (2021) (quoting White v. Pauly, 580 U.S. 73, 78-79 (2017)). "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." Taylor v. Riojas, 592 U.S. 7, 9 (2020) (quoting Brosseau v. Haugen, 543

U.S. 194, 198 (2004)). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Kisela v. Hughes, 584 U.S. 100, 104 (2018) (quoting White, 580 U.S. at 79). Because qualified immunity is an affirmative defense, the defendant asserting the defense has the burden to establish that it applies. Mack v. Yost, 63 F.4th 227 (3d Cir. 2023) (citing Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014)).

Boran argues that he is entitled to qualified immunity because he told Carr that he would refer the matter to the proper authorities to have D.S. transferred, because Carr does not have any evidence of what Boran did after that conversation, and because Carr admitted that he was never physically assaulted by D.S. (Doc. 60 at 9). As discussed above, the court finds that there are genuine issues of material fact as to what actions Boran took to protect Carr after they spoke, and the court therefore cannot conclude on the current record that Boran acted reasonably. And to the extent Boran relies on Carr's purported "admission" that he was not physically assaulted by D.S., this is simply not supported by the record: Carr testified during his deposition that D.S. assaulted him. (See note 5 supra; Doc. 59-5 at 47:1-15).[6]

---

[6] The court briefly addresses two other arguments Boran raises in support of qualified immunity. First, he argues that there is no clearly established law supporting Carr's position, but this is based on Carr not being physically assaulted and Boran referring the matter to the proper authorities for D.S. to be transferred. (Doc. 60 at 7). Neither of these facts is supported by the summary judgment record. And it *is* clearly established that a prison official violates an inmate's civil rights by failing to protect him from an assault by another inmate. See, e.g., Farmer, 511 U.S. at 847. Boran also argues in conclusory fashion that he is entitled to qualified immunity because his actions "at most" amount to negligence. The court disagrees for the reasons discussed above and concludes that a finder of fact could find him deliberately indifferent.

## IV.    <u>Conclusion</u>

Plaintiff's motion to compel discovery and defendant's motion for summary judgment are denied. A status conference will be scheduled to discuss whether the parties wish to proceed with mediation or whether the case should be scheduled for trial. An appropriate order shall issue.

/S/ <span style="font-variant:small-caps">Keli M. Neary</span>
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:        May 11, 2026